IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VICTOR M. YEPEZ, | ) | |
| Petitioner, | ) | No C 04-5124 JSW (PR) |
| | ) | |
| vs. | ) | ORDER DENYING PETITION |
| | ) | FOR A WRIT OF HABEAS |
| JOE McGRATH, Warden, | ) | CORPUS |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**INTRODUCTION**

Petitioner, a prisoner of the State of California, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Per order filed on April 11, 2005, this Court found that the petition stated four cognizable claims under § 2254 and ordered Respondent to show cause. On January 23, 2006, this Court dismissed the Petition as not fully exhausted. However, this Court found the Petition to be fully exhausted, and on May 18, 2006 the dismissal was vacated and the order to show cause reinstated. Respondent filed an answer. Petitioner has not filed a traverse. This order denies the petition for writ of habeas corpus on the merits.

**PROCEDURAL BACKGROUND**

On September 14, 2001, the Santa Clara County District Attorney filed an

information charging Petitioner with one count of murder, Cal. Penal Code § 187, and one count of attempted murder, Cal. Penal Code § § 187/664(a).   The information alleged that both counts involved use of a firearm, Cal. Penal Code §§ 12022.5, subd. (a), 12021.5, subd. (a), and were committed for the benefit of a street gang, Cal. Penal Code § 186.22, subd. (b)(1).

On May 14, 2002, following a jury trial, Petitioner was convicted on both counts.  The jury found all the charged enhancements to be true.  On June 21, 2002, the trial court sentenced Petitioner to 25 years to life plus 12 years for the murder, and a consecutive life term plus six years for the attempted murder.

Petitioner filed a direct appeal in the California Court of Appeal, Sixth Appellate District.  On September 15, 2003, the court affirmed his conviction. The California Supreme Court denied review on November 15, 2003.  Petitioner did not pursue collateral challenges in state court.  Petitioner filed the instant matter on December 3, 2004.

## STATEMENT OF THE FACTS

The Court of Appeals summarized the factual background of the case as follows:

> Defendant was a member of a gang known as the VTG (Varrio Tami Lee Gang), which was affiliated with the Surenos.  He joined several gang members in a three-car caravan that set out to find and shoot members of the rival Norteno gang.  The group saw Eduardo Rangel and Roberto Torres walking toward a convenience store.  Torres wore a red shirt, which ostensibly identified him as a Norteno. Defendant's group stopped, exited the vehicles, and confronted the two victims with knives.  The victims ran away.  Defendant shot a gun at Rangel but missed.  Several gang members caught Torres and beat him to the ground. Defendant then shot Torres twice.  Torres later died.
>
> After waiving his Miranda rights, defendant gave the police a tape-recorded statement, which essentially attested to the above.  The tape recording was played to the jury over defendant's objection grounded on the involuntariness of the confession.

2

Fellow gang member Juan Aguilar testified that he had given defendant a gun just before he and the group set out to find Nortenos and that defendant had shot at Rangel and Torres. He also admitted that he had been charged with murder and attempted murder for his part in the incident but had later agreed to a plea bargain in which he pleaded guilty to voluntary manslaughter in exchange for an eight-year sentence and a promise to give truthful statements and testimony about the shooting incident. On cross-examination, Aguilar affirmed that, in his mind, if he did not tell everyone in the courtroom that defendant was the man responsible for the shooting, the district attorney would take back the plea agreement.

*People v. Yepez*, 2003 Cal. App. Unpub. LEXIS 8751, at 1–3 (Cal. Ct. App. Sept. 15, 2003) (footnotes omitted).

## **STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application'

3

clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) *overruled on other grounds*; *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (citing *Williams*, 529 U.S. at 405-07).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

The only definitive source of clearly established federal law under

4

1  28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the

2  state court decision.  *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062,

3  1069 (9th Cir. 2003).  While the circuit law may be "persuasive authority" for the

4  purposes of determining whether a state court decision is an unreasonable

5  application of Supreme Court precedent, only the Supreme Court's holdings are

6  binding on the state courts and only those holdings need be "reasonably" applied.

7  *Id.*

8  In his petition, Petitioner raises four grounds for relief: (1) Petitioner's

9  statements to the police should have been suppressed as involuntarily made; (2)

10 Petitioner's counsel was ineffective for failing to adequately raise the violation of

11 Petitioner's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); (3) the trial

12 court's use of the jury instruction CALJIC No. 2.11.5 violated Petitioner's rights

13 to due process and a fair trial; and (4) cumulative error.

## DISCUSSION

**1.**     **Admission of Petitioner's Confession**

16 Petitioner alleges that his tape-recorded confession was involuntary, and

17 that it should have been suppressed by the trial court.  Petitioner offers three

18 arguments: (1) the officers promised that he would help himself and receive a

19 lesser sentence if he admitted being the gunman; (2) the officers used "deception

20 and subterfuge" by falsely claiming that Petitioner had already been identified by

21 civilian witnesses, and that scientific tests had been performed on the gun; and (3)

22 Petitioner was youthful and unsophisticated in the law.  These claims are without

23 merit.

24 Following his arrest and at the start of his custodial interrogation,

25 Petitioner waived his rights under *Miranda v. Arizona*, 384 U.S. 436, and agreed

26 to speak with Police Officers Torres and Brown.  Clerk's Transcript on Appeal

28 5

("CT"), 210 (Resp't. Ex. 1(B)).

Petitioner acknowledged that he was a former member of the VTG gang and that he had been present at the time of the shootings.  CT 210-211.  The officers informed Petitioner that they had a clear idea of what happened because they "talked to a lot of people," including non-gang witnesses.  Officer Torres further told Petitioner to be "completely honest with us."  CT 212.  This led to the following exchange:

> [Officer Torres]: You need to be man enough to stand up and be responsible for what occurred. Down the road, believe it or not, it's gonna help you. It really will. I'm telling you. Because I mean there's some undisputable facts, that no matter what you say. No matter what lies you say, if you decide to go that route it's just gonna look very bad for you. At least if you come clean and say, 'you know what? I made a mistake. I apologize for what I did. I was young and dumb' or whatever the case may be in your mind but you need to come clean with us. Okay. How did this thing all start?
> [Defendant]: And that's gonna help me?
> [Officer Torres]: It will, yes it will. I have nothing to lose. You have to trust us.
> [Officer Brown]: We already know what happened. We talked to too many people. More than your homeboys.
> [Officer Torres]: Okay. I know right now you're sitting over there thinking, 'oh man, I'm gonna . . . you know, if I tell the truth I'm fucked.' Or whatever the case you got, you know, you know. That's not the case. Now's your opportunity . . . like I told you, now's your opportunity to tell us your story but tell us the truth. Okay. Be responsible and tell us, 'You know what? Hey, I'm [sic] made a mistake and here is the mistake I made and here's why I made that mistake at the time. I apologize for making that mistake.' Continue on with your life. You're a young man. You got . . .
> [Defendant]: Continue my life in jail?
> [Officer Torres]: That's not, that's not necessarily true. That is not true.
> [Defendant]: That I did it.
> [Officer Brown]: You did what?
> [Defendant]: That shooting.
> [Officer Brown]: We need to know exactly what happened from beginning to end. Okay?
> [Officer Torres]: It's hard. I know it is. But you know what, Detective Brown and I have been doing this for years. We can tell you you're gonna feel a lot better once you get this off your chest. Okay. (inaudible) Why don't you start and tell us where it started and what happened? We knew you shot him. There's no doubt in my mind. See, that at least shows us that you are at least

6

1                     responsible enough to admit. Okay, you shot this guy. Okay. Now
                     let's continue to move forward. What happened that day? Where'd
2                      you guys all meet up at?

3   CT 212-214.

4         Petitioner then told them that he and the other VTG members had decided

5 to look for Norteno gang members to "go throw a show." CT 238. The officers

6 inquired about the gun Petitioner used in the shooting, and Petitioner stated that

7 someone had given him the gun that evening. CT 239. Petitioner eventually

8 inquired about his possible sentence:

9         [Defendant]: How many years am I looking forward to?
         [Officer Torres]: Well, you know what? That's all up to the
10         courts.
        [Defendant]: But what do you think? You know . . . .
11         [Officer Torres]: Okay, okay, I'll . . .
        [Defendant]: . . . tell me the truth.
12         [Officer Torres]: I'll, I'll be straight up with you. Okay.
        Somebody gets convicted of this type of crime, they can do a
13         minimum of maybe four to seven years up to life in prison and
        I'll tell you what determines where they go. The most important
14         thing is responsibility, truth and remorse. When I say remorse . . .
        feel sorry for what that, what they did. Okay, I'll give you an
15         example. If somebody comes in here all together different. Okay?
        If somebody come [sic] in here and they stab somebody to death.
16         Okay and we have witnesses that say, 'They did it. They did it.'
        You know, everything and we know they did it. And that person
17         says, 'hey fuck you,' umm, 'I don't know what you're talking
        about.' And of course all the evidence comes in court and this
18         person looks like, you know, hey he's a bad person. Okay. I think
        you just made a mistake. It was one mistake that you made and if
19         you wind up like you say, telling us the truth. You'll probably
        look at the low end of it. I can't guarantee you that cause I'm not
20         the judge and I'm not the D.A. All I am, we're just the
        investigators.
21         [Officer Brown]: See we can't make you promises like that. We
        can tell you what the range of things is but to nail it down to one
22         thing, we're not allowed to promise you anything. Straight up.
        [Officer Torres]: The only thing I will promise you is that when
23         we get done here and I talk to the D.A., if you tell us the
        complete truth, I'm gonna tell him. I'm gonna go 'hey listen. Mr.
24         Yepez was young. He came in, he spoke to us. He told us the
        complete truth. He's responsible for the act and he was truly
25         sorry for what happened out there.['] That can only help you
        down the road. Okay. So that's why we're asking you this [sic]
26         kind of questions. We know, we know what the answers are
        gonna be. As far as the true answer, okay. But this thing, as far as

27

28                                       7

trying to uh, slam you or jam you. We're not trying to do that, Victor. All we're trying to do is get the truth. If the courts and the D.A. say, 'hey you know what, we're gonna give this guy four years, fine. Let them give you four years.' But you know what you have to look at Victor is that you're very young. You have a long life to live. You have some wonderful kids that you need to take responsibility for. Okay? So let's thing [sic] about that. Think about yourself. Think about your family. Your life's not over, Victor. You're [sic] life's just starting. There's some people out there that don't have a life anymore. And I can tell by your reaction that you are sorry for what happened out there. But you can't undue [sic] what's already occurred. Right?

CT 240-242.

During pre-trial hearings, defense filed a motion to exclude Petitioner's confession as involuntary.   Reporter's Transcript on Appeal ("RT"), 6 (Resp't. Ex. 2(A)).  The trial court denied the motion, finding that the entire statement "was not coercive in any fashion."  RT  9.

On appeal, Petitioner argued that the statements by the officers amounted to promises of lenient treatment if Petitioner told them about his role in the shootings.  The Court of Appeal disagreed.  It found that the officers did not make any promises to Petitioner, and had in fact affirmatively emphasized that they could not make any promises.  *Yepez*, 2003 Cal. App. Unpub. LEXIS 8751 at *10-11 (2003).  Moreover, the court noted that Petitioner acknowledged to the officers that "You told me that you guys can't make promises."  *Id.* at *11.

The court also rejected Petitioner's claim that the officers engaged in coercive conduct by painting a false picture of the criminal justice system and falsely suggesting that Petitioner would earn a four-to-seven year sentence if he confessed.  *Id.*  The court found that Petitioner's argument was undermined by the officers' statement that Petitioner could receive "up to life in prison," and their acknowledgment that his cooperation would not earn him a lower-end sentence. *Id.*  The court also noted that to the extent that the evidence of voluntariness was conflicting, the appellate court was required to defer to the trial court's

8

1    determination that Petitioner's incriminating statements were voluntary.  *Id.*

2          The court similarly failed to find any element of coercion in the officers'

3    claimed deception about the non-gang witnesses and the scientific tests on the

4    gun.  Because it found no causal connection between the confession and the

5    subterfuge, the court found that Petitioner's will was not overborne in violation of

6    the Due Process Clause of the 14th Amendment.  *Id*, at *12 (citing *Colorado v.

7    Connelly*, 479 U.S. 157, 167 (1986)).  Absent any element of coercion, the court

8    declined to examine what role Petitioner's personal characteristics might have had

9    on the totality of the circumstances.  *Id.*

10         **A.     Legal Standard**

11         Involuntary confessions in state criminal cases are inadmissible under the

12   Fourteenth Amendment.  *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960).  The

13   voluntariness of a confession is evaluated by reviewing both the police conduct in

14   extracting the statements and the effect of that conduct on the suspect.  *Miller v.

15   Fenton,* 474 U.S. 104, 116 (1985); *Henry v. Kernan*, 197 F.3d 1021, 1026 (9th

16   Cir. 1999).  Absent police misconduct causally related to the confession, there is

17   no basis for concluding that a confession was involuntary in violation of the

18   Fourteenth Amendment.  *Connelly*, 479 U.S. at 167 (1986); *Norman v.

19   Ducharme*, 871 F.2d 1483, 1487 (9th Cir. 1989), *cert. denied*, 494 U.S. 1031, *and

20   cert. denied*, 494 U.S. 1061 (1990).

21         To determine the voluntariness of a confession, the court must consider the

22   effect that the totality of the circumstances had upon the will of the defendant.

23   *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973).  "The test is whether,

24   considering the totality of the circumstances, the government obtained the

25   statement by physical or psychological coercion or by improper inducement so

26   that the suspect's will was overborne."  *United States v. Leon Guerrero*, 847 F.2d

27

28                                          9

1363, 1366 (9th Cir. 1988) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)).

A confession is only involuntary if the police use coercive activity to undermine the suspect's ability to exercise his free will. *Derrick v. Peterson*, 924 F.2d 813, 818 (9th Cir. 1990), *cert. denied*, 502 U.S. 853 (1991). Personal characteristics of the defendant are therefore irrelevant absent proof of coercion. *Id.* (citation omitted); *see, e.g., United States v. Huynh*, 60 F.3d 1386, 1388 (9th Cir. 1995) (cultural background did not make defendant incapable of free and voluntary choice). Encouraging a suspect to tell the truth is not coercion. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997). Nor is it coercive to recite potential penalties or sentences, including the potential penalties for lying to the interviewer. *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003).

The suspect's age may be taken into account in determining whether a confession was voluntary. *Taylor v. Maddox*, 366 F.3d 992, 1015-16 (9th Cir. 2004). However, it is not enough, even in the case of a juvenile, that the police indicate that a cooperative attitude would be to the benefit of an accused unless such remarks rise to the level of being threatening or coercive. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (quoting *Fare v. Michael C.*, 442 U.S. 707, 727 (1979)).

Voluntariness of a confession is not a factual issue entitled to a presumption of correctness under 28 U.S.C. § 2254(d), but is a legal question meriting independent consideration in a federal habeas corpus proceeding. *Miller v. Fenton*, 474 U.S. at 116; *Collazo v. Estelle*, 940 F.2d 411, 415 (9th Cir. 1991) (en banc) (federal court not bound by state court finding that confession is voluntary), *cert. denied*, 502 U.S. 1031 (1992). A federal habeas court must review de novo the state court's finding that a confession was voluntarily given.

10

*Derrick v. Peterson*, 924 F.2d at 818.  But a state court's subsidiary factual conclusions are entitled to the presumption of correctness.  *Rupe v. Wood*, 93 F.3d 1434, 1444 (9th Cir. 1996) (deferring to state appellate court's conclusion that challenged statement did not constitute threat or promise).

The erroneous admission of a coerced confession is subject to harmless error analysis.  *Fulminante v. Arizona*, 499 U.S. 279, 306-12 (1991).  In other words, habeas relief is appropriate only if the coerced confession had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Pope v. Zenon*, 69 F.3d 1018, 1025 (9th Cir. 1995) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

### B.    Analysis

After examining the record of the interrogation and the resulting confession, this Court concludes that the police officers' conduct was not sufficiently "coercive" such that Petitioner's will was overborne, rendering the confession involuntary.  *See Leon Guerrero*, 847 F.2d at 1366 (9th Cir. 1988). Because Petitioner's confession was not involuntary, the California Court of Appeal's denial of the claim was neither contrary to, nor an unreasonable application of clearly established federal law.

This Court finds that the Court of Appeal's determination that the officers' statements about Petitioner's potential sentence did not have the effect of overcoming Petitioner's will was not contrary to or an unreasonable interpretation of established Supreme Court precedent.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973).  At the start of the interview, the officers indicated that the evidence against Petitioner was strong, that they already had a clear idea of what happened, and that if he told the truth, it would help him "down the road," and he would "feel a lot better."  CT 213, 214.  At this stage in the interrogation, the

officers merely assured Petitioner that he would not "necessarily" spend the rest of his life in prison. Their assurances were not accompanied by any explicit promises that Petitioner would receive a more lenient sentence in exchange for his confession. Merely encouraging a suspect to tell the truth does not amount to coercion. *Amaya-Ruiz*, 121 F.3d at 494.

The subject of potential sentences came up again after Petitioner had provided more details about his participation in the shooting. Petitioner inquired about the potential sentence he faced, at which point the officers indicated he could receive a "minimum of maybe four to seven years up to life in prison," but they emphasized that Petitioner's sentence was "up to the courts." CT 240. Petitioner clearly understood this when he later responded, "You told me that you guys can't make promises, right?" CT 283. Contrary to Petitioner's claim, the officers' conduct here does not amount to physical or psychological coercion, because the officers disclaimed any power to guarantee lenient treatment, and the discussion of the potential sentence was responsive to Petitioner's question.

Petitioner further alleges that the officers painted a false picture of the criminal justice system by suggesting that he would receive a "low-end" sentence if he accepted responsibility for his actions. However, this interpretation is undercut by the officers' simultaneous recognition that they could not guarantee anything, that they could only indicate "the range of things" and that Petitioner could still face "up to life in prison." CT 240-241. Moreover, these statements were made long after Petitioner had voluntarily incriminated himself. Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. *Connelly*, 479 U.S. at 164.

The same analysis attaches to Petitioner's argument that the officers

12

deceived or misled him when they claimed that they had conducted tests on the gun, and that they had eyewitness identifications from non-gang members.  CT 212, 249-251.  The Court of Appeal's determination that there was insufficient basis to conclude that these statements undermined Petitioner's ability to exercise free will is not contrary to established federal law.  *See Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988).

Because Petitioner fails to show any basis for concluding that his will was overborne, his age and lack of sophistication regarding the law have no bearing on the totality of the circumstances.  Personal characteristics of the defendant are irrelevant absent proof of coercion.  *Derrick v. Peterson*, 924 F.2d 813, 818 (9th Cir. 1990), *cert. denied*, 502 U.S. 853 (1991).

Petitioner also suggests that his rights under *Miranda,* 384 U.S. 436 were violated by the admission of the statement.  By inference, this argument was rejected by the Court of Appeal, which noted that Petitioner waived his *Miranda* rights without suggesting that this waiver was invalid.  This Court finds that Petitioner was properly advised of his *Miranda* rights prior to the interrogation, and that his waiver was voluntary, knowing, and intelligent.  *See Miranda* 384 U.S. at 475.  Therefore, the admission of the statement did not violate Petitioner's constitutional rights under *Miranda*.

After reviewing the evidence and considering the totality of the circumstances, this Court cannot conclude that the confession was produced by "physical or psychological coercion or by improper inducement so that the suspect's will was overborne."  *Leon Guerrero*, 847 F.2d at 1366 (9th Cir. 1988) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)).  The confession was produced by legitimate police interrogation techniques which were far from physically or psychologically coercive.

13

1    Nor can this Court conclude that the admission of the statement constituted

2    a violation of *Miranda*.  Therefore, the Court of Appeal's determination that the

3    statement was properly admitted was neither contrary to, nor an unreasonable

4    application of clearly established Federal law as determined by the Supreme

5    Court.

6    **2.    Ineffective Assistance of Trial Counsel**

7    Petitioner argues in the alternative that if his trial counsel failed to

8    specifically move to suppress the confession on the grounds Petitioner raises here,

9    and that his  trial counsel's error deprived him of effective assistance of counsel.

10    This argument was raised and implicitly rejected by the state appellate court on

11    direct appeal, which decided the merits of Petitioner's claims regarding the

12    voluntariness of his confession.  This decision was not unreasonable, and

13    therefore this Court has no reason to find that Petitioner's trial counsel was

14    ineffective.

15    **A.    Legal Standard**

16    The Sixth Amendment guarantees the right to effective assistance of

17    counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  *See Williams*

18    *(Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000).  In order to prevail on a Sixth

19    Amendment ineffectiveness of counsel claim, Petitioner must establish two

20    things.  First, Petitioner must establish that counsel's performance was deficient

21    and fell below an "objective standard of reasonableness" under prevailing

22    professional norms. *Strickland*, 466 U.S. at 687-88.  Second, Petitioner must

23    establish that he was prejudiced by counsel's deficient performance and that

24    "there is a reasonable probability that, but for counsel's unprofessional errors, the

25    result of the proceeding would have been different."  *Id.* at 694.

26    The *Strickland* framework for analyzing ineffective assistance of counsel

27

28    14

claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000).

### B.    Analysis

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *See Strickland*, 466 U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995), *cert. denied*, 516 U.S. 1124 (1996).

This Court finds that Petitioner's confession was voluntary for purposes of the 14th Amendment, and that there was no violation of Petitioner's *Miranda* rights. The trial court similarly found that the statement was not coerced. RT 9. Any failure by Petitioner's trial counsel to raise a constitutional challenge to the confession would have been harmless under the prejudice prong of *Strickland*, because it would not have been reasonable to expect the trial court to grant the motion. *Kimmelman v. Morrison*, 477 U.S. 365, 373-374 (1986) (no prejudice where trial court would have been unreasonable to grant motion to suppress evidence), *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under *Strickland* for failure to file motion, petitioner must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him.)

Accordingly, the Court of Appeal's rejection of Petitioner's claim of ineffective assistance of trial counsel was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

### 3.    Instructional Error

Petitioner alleges that the trial court erred in giving CALJIC No. 2.11.5,

15

1    which instructs the jury that they are not to give any consideration to the fact that

2    other involved persons are not being tried for the charged crime.  Petitioner

3    contends that this instruction prevented the jury from taking into account the

4    possibility that Juan Aguilar's favorable plea agreement influenced his testimony.

5    Petitioner alleges that the trial court's error deprived him of his right to due

6    process and a fair trial under the Fifth, Sixth and Fourteenth Amendments.

7    Because this Court finds that the instruction did not violate Petitioner's federal

8    constitutional rights, the Court of Appeal did not unreasonably apply federal law

9    when it found that the instruction was proper.

10           The instruction was presented to the jury as follows:

11           There has been evidence in this case indicating that a person other
             than defendant was or may have been involved in the crime for
12           which the defendant is on trial.

13           There may be many reasons why that person is not here on trial.
             Therefore, do not discuss or give any consideration as to why the
14           other person is not being prosecuted in this trial or whether he has
             been or will be prosecuted. Your sole duty is to decide whether the
15           People have proved the guilt of the defendant on trial.

16    CALJIC No. 2.11.5, RT 599-9 (Resp't. Ex. 2(C)).  The California Court of

17    Appeal found that the instruction was not erroneous for two reasons.

18           First, the instruction was not relevant to Aguilar's testimony, because it

19    only relates to non-prosecuted witnesses, and the jury knew that Aguilar had been

20    prosecuted for his involvement in the crime.  *Yepez*, 2003 Cal. App. Unpub.

21    LEXIS 8751, at *13-14.  The Court of Appeal held:

22           Courts should not give CALJIC No. 2.11.5 in an unmodified
             form when 'a person who might have been prosecuted for the
23           crime has testified at trial.' [Citations.] This rule follows because
             'the purpose of the challenged instruction is to discourage the jury
24           from irrelevant speculation about the prosecution's reasons for not
             jointly prosecuting all those shown by the evidence to have
25           participated in the perpetration of the charged offenses, and also to
             discourage speculation about the eventual fates of unjoined
26           perpetrators.' [Citations.]  Thus, the instruction '"should not be
             given when a nonprosecuted participant testifies because the jury is

27

28                                                  16

entitled to consider the lack of prosecution in assessing the witness's credibility." [Citations.]' [Citations.]

*Id*. Because the jury was informed that Aguilar had received a plea bargain, the instruction did not logically apply to his testimony. *Id.*

Second, the jury received the full panoply of witness credibility and accomplice instructions, which under California law ameliorates the impact of the instruction, even where it has been given in error. The Court of Appeal held:

> Here, the trial court gave proper instructions that in assessing the credibility of a witness the jury could consider the existence or nonexistence of a bias, interest, or other motive and the witness' prior conviction of a felony. (CALJIC No. 2.20.) It also instructed that the fact that a witness has been convicted of a felony may be considered for the purpose of determining the credibility of the witness. (CALJIC No. 2.23.) And it finally told the jury that the testimony of an accomplice should be viewed with caution. (CALJIC No. 3.18.)

*Id.* at *16. In light of the totality of the instructions, the defense was free to refer to the plea agreement in attacking Aguilar's credibility; in fact defense counsel did make such a claim during closing arguments. Therefore, the Court of Appeal found that the trial court did not err by giving CALJIC No. 2.11.5.

## A.   Legal Standard

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Id.* at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").

The instruction may not be judged in artificial isolation, but must be

considered in the context of the instructions as a whole and the trial record.  *See Estelle*, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir.), *cert. denied*, 488 U.S. 861 (1988).

In reviewing a challenged instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990); *see, e.g., Ficklin v. Hatcher*, 177 F.3d 1147, 1150-51 (9th Cir. 1999) (harmless error when certain that jury did not rely on constitutionally infirm instruction).  A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred, however.  *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998).

If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings.  *See Calderon v. Coleman*, 525 U.S. at 146-47.  In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice."  *Id.* (citation omitted); *see, e.g., Coleman v. Calderon*, 210 F.3d 1047, 1051 (9th Cir. 2000).

**B.      Analysis**

Reading CALJIC No. 2.11.5 in conjunction with the other instructions

18

given at Petitioner's trial, this Court cannot conclude that there was a reasonable likelihood that the jury applied the instruction in a way that violated Petitioner's due process rights under the Constitution. *Estelle,* 502 U.S. at 72 & n.4; *Boyde*, 494 U.S. at 380.

As the Court of Appeal pointed out, the jury was fully instructed that it could consider a witness's bias, interest or motive in evaluating his credibility (CALJIC No. 2.20), as well as any prior felony convictions (CALJIC No. 2.23). Moreover, they were instructed that accomplice testimony was to be viewed with caution, and was subject to the rule requiring corroboration (CALJIC Nos. 3.18, 3.16). RT 599-9, -11, -22.

In light of these other instructions, CALJIC No. 2.11.5 properly informed the jury that they were not to speculate about the possible reasons why other participants were not prosecuted; however, there is no reasonable likelihood that the instruction misled the jury into discounting Aguilar's plea agreement when evaluating his bias or credibility. *See Allen v. Woodford*, 395 F.3d 979, 996 (9th Cir. 2005) (giving CALJIC No. 2.11.5 harmless error given the totality of the instructions). Thus, the court's use of the challenged instruction did not render the trial fundamentally unfair so as to violate due process.

Nor can this Court conclude that any alleged error in the instruction would have been serious enough to affect the outcome of the trial. Therefore, considering all of the instructions as a whole, the alleged instructional error did not have a "substantial and injurious effect or influence" in determining the jury's verdict. *Brecht*, 507 U.S. at 637.

Because the challenged instruction did not violate Petitioner's constitutional rights, the Court of Appeal's adjudication of this issue was neither contrary to, nor involve an unreasonable application of, clearly established federal law.

**4.**      <u>**Cumulative Error**</u>

Petitioner alleges that his convictions should be reversed based on the cumulative effect of the various errors alleged above.  This argument was implicitly dismissed by the Court of Appeal, when it rejected each of Petitioner's claims of trial court error.  Similarly, because this Court concludes that Petitioner's constitutional rights were not violated by any of the alleged errors, there was no prejudice to Petitioner, cumulative or otherwise.

     **A.**      **Legal Standard**

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution).

Cumulative error is more likely to be found prejudicial when the government's case is weak.  *See id.; see, e.g., Thomas*, 273 F.3d. at 1180 (noting that the only substantial evidence implicating the defendant was the uncorroborated testimony of a person who had both a motive and an opportunity to commit the crime); *Walker v. Engle*, 703 F.2d 959, 961-62, 968 (6th Cir.), *cert. denied*, 464 U.S. 951 (1983).  However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002); *Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

     **B.**      **Analysis**

Petitioner has failed to make a showing that the state courts committed error in denying his claims regarding the trial court's admission of the videotaped

confession or its use of the challenged jury instruction.  Any potential errors were deemed by this Court to be harmless.  Accordingly, there is no single constitutional error which could have accumulated to the level of a constitutional violation.  Petitioner's case was not one of the rare cases in which cumulative errors denied him a fair trial. *Cf. Alcala v. Woodford*, 334 F.3d at 893-95.  The state court's rejection of Petitioner's cumulative prejudice claim was not contrary to, or an unreasonable application of, governing law.

## **CONCLUSION**

The court is satisfied that Petitioner is not entitled to federal habeas relief on his federal claims.  For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated: October 25, 2007

_____
JEFFREY S. WHITE
United States District Judge

1    UNITED STATES DISTRICT COURT

2    FOR THE

3    NORTHERN DISTRICT OF CALIFORNIA

4

5
     YEPEZ,                                    Case Number: CV04-05124 JSW
6
                     Plaintiff,                **CERTIFICATE OF SERVICE**
7
          v.
8
     JOE McGRATH, Warden,
9
                     Defendant.
10   _____/

11
     I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
12   Court, Northern District of California.

13   That on October 25, 2007, I SERVED a true and correct copy(ies) of the attached, by placing
     said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by
14   depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
     delivery receptacle located in the Clerk's office.

15

16

17   Nancy Hsiao-Hui Tung
     Peggy S. Ruffra
18   CA State Attorney's Office
     455 Golden Gate Avenue
19   Suite 11000
     San Francisco, CA 94102-7004
20
     Victor M. Yepez
21   T58557
     CSP High Desert
22   P.O. Box 3030 D5-129
     Susanville, CA 96127
23
     Dated: October 25, 2007              *Jennifer Ottolini*
24                                        Richard W. Wieking, Clerk
                                          By: Jennifer Ottolini, Deputy Clerk
25

26

27

28